## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JASON TEPFENHART,<br>NICHOLAS TEPFENHART,<br>JACK MACKLEER, DESTINI<br>NORRIS, NICOLAS VELASQUEZ,<br>GARY ASTI, ANNA SOLORIO,<br>BRIAN HARRIS, TIFFANY<br>FOSSETT, JAMES GATES,<br>DANIKA ADAY, BRIAN KADEN,<br>WILLIAM KITTREDGE, JOHN<br>HANDROCK, JAMES<br>HANDROCK and TRACEY<br>STOUGH, individually and<br>on behalf of others similarly<br>situated,<br><br>   Plaintiffs,<br><br>v.<br><br>EQUIFAX, INC.,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br>CLASS ACTION |

## FIRST AMENDED COMPLAINT

COME NOW, Plaintiffs in the above-styled action, file their Complaint both individually and on behalf of a class of similarly-situated individuals against the Defendant Equifax, Inc. (hereinafter, "Equifax"), and, in support thereof, show as follows:

## INTRODUCTION

1.      Plaintiffs file this Complaint as a national class action on behalf of over 140 million consumers across the country harmed by Equifax's failure to secure and safeguard consumers' personally identifiable information which Equifax collected from various sources in connection with the operation of its business as a consumer credit reporting agency, and for failing to provide timely, accurate and adequate notice to Consumer Plaintiffs and other Class members that their information had been stolen and precisely what types of information were stolen.

2.      Equifax has acknowledged that a cybersecurity incident ("Data Breach") potentially impacting approximately 143 million U.S. consumers. It has also acknowledged that unauthorized persons exploited a U.S. website application vulnerability to gain access to certain files. Equifax claims that based on its investigation, the unauthorized access occurred from mid-May through July 2017. The information accessed primarily includes names, Social Security numbers, birth dates, addresses, and, in some instances, driver's license numbers. In addition, Equifax has admitted that credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed.

## PARTIES

3.     Jason Tepfenhart is above the age of nineteen (19) and is a resident of Colorado.

4.     Nicholas Tepfenhart is above the age of nineteen (19) and is a resident of Colorado.

5.     Jack Mackleer is above the age of nineteen (19) and is a resident of Virginia.

6.     Destini Norris is above the age of nineteen (19) and is a resident of Tennessee.

7.     Nicolas Velasquez is above the age of nineteen (19) and is a resident of California.

8.     Gary Asti is above the age of nineteen (19) and is a resident of Arizona.

9.     Anna Solorio is above the age of nineteen (19) and is a resident of Utah.

10.     Brian Harris is above the age of nineteen (19) and is a resident of North Dakota.

11.     Tiffany Fossett is above the age of nineteen (19) and is a resident of Georgia.

12.     James Gates is above the age of nineteen (19) and is a resident of

Georgia.

13.     Danika Aday is above the age of nineteen (19) and is a resident of Mississippi.

14.     Brian Kaden is above the age of nineteen (19) and is a resident of North Carolina.

15.     William Kittredge is above the age of nineteen (19) and is a resident of Washington.

16.     John Handrock is above the age of nineteen (19) and is a resident of Missouri.

17.     Jamie Handrock is above the age of nineteen (19) and is a resident of Missouri.

18.     Tracey Stough is above the age of nineteen (19) and is a resident of Indiana.

19.     Equifax is a multi-billion-dollar Georgia corporation that provides credit information services to millions of businesses, governmental units, and consumers across the globe. Equifax operates through various subsidiaries including Equifax Information Services, LLC, and Equifax Consumer Services, LLC aka Equifax Personal Solutions aka PSOL. Each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

20.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

21.     This Court has personal jurisdiction over Defendant because it conducts business in Alabama and has sufficient minimum contacts with Alabama.

22.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS

23.     Throughout the past year, Equifax collected and stored personal and credit information from Jason Tepfenhart, Nicholas Tepfenhart, Jack Mackleer, Destini Norris, Nicolas Velasquez, Gary Asti, Anna Solorio, Brian Harris, William Kittredge, John Handrock , Jamie Handrock and Tracey Stough including their social security numbers, birth dates, home addresses, driver's license information, and credit card numbers.

24.     Equifax owed a legal duty to consumers like Jason Tepfenhart,

Nicholas Tepfenhart, Jack Mackleer, Destini Norris, Nicolas Velasquez, Gary Asti, Anna Solorio, Brian Harris, William Kittredge, John Handrock, Jamie Handrock and Tracey Stough to use reasonable care to protect their credit and personal information from unauthorized access by third parties. Equifax knew that its failure to protect Plaintiffs' credit and personal information from unauthorized access would cause serious risks of credit harm and identify theft for years to come.

25.    On September 7, 2017, Equifax announced for the first time that from May to July 2017, its database storing Jason Tepfenhart, Nicholas Tepfenhart, Jack Mackleer, Destini Norris, Nicolas Velasquez, Gary Asti, Anna Solorio, Brian Harris, William Kittredge, John Handrock, Jamie Handrock and Tracey Stough's credit and personal information had been hacked by unauthorized third parties, subjecting Plaintiffs to credit harm and identify theft.

26.    In an attempt to increase profits, Equifax negligently failed to maintain adequate technological safeguards to protect Jason Tepfenhart, Nicholas Tepfenhart, Jack Mackleer, Destini Norris, Nicolas Velasquez, Gary Asti, Anna Solorio, Brian Harris, William Kittredge, John Handrock, Jamie Handrock and Tracey Stough's information from unauthorized access by hackers.

27.    Equifax knew and should have known that failure to maintain adequate technological safeguards would eventually result in a massive data breach.

28. Equifax could have and should have substantially increased the amount of money it spent to protect against cyber-attacks but chose not to.

29. Consumers like Jason Tepfenhart, Nicholas Tepfenhart, Jack Mackleer, Destini Norris, Nicolas Velasquez, Gary Asti, Anna Solorio, Brian Harris, William Kittredge, John Handrock, Jamie Handrock and Tracey Stough should not have to bear the expense caused by Equifax's negligent failure to safeguard their credit and personal information from cyber-attackers.

30. As a direct result of Equifax's negligence as alleged in this complaint, Plaintiffs will suffer injury of loss to pay for third-party credit monitoring services they otherwise would not have to pay for.

31. Jason Tepfenhart, Nicholas Tepfenhart, Jack Mackleer, Destini Norris, Nicolas Velasquez, Gary Asti, Anna Solorio, Brian Harris, William Kittredge, John Handrock, Jamie Handrock and Tracey Stough hope Equifax will use this massive data breach, and their subsequent lawsuit, as a teachable moment to finally adopt adequate safeguards to protect against this type of cyber- attack in the future.

32. The ramifications of Equifax's failure to keep Plaintiffs' and Class members' data secure are severe.

33. The FTC defines identity theft as "a fraud committed or attempted

using the identifying information of another person without authority."[1] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[2]

34.     Personal identifying information ("PII") is a valuable commodity to identity thieves once the information has been compromised. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[3]

35.     Identity thieves can use personal information, such as that of Plaintiffs and Class members which Equifax failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

36.     Javelin Strategy and Research reports that identity thieves have stolen

---

[1] 17 C.F.R § 248.201 (2013).

[2] *Id.*

[3] Federal Trade Commission, *Warning Signs of Identity Theft,* available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited April 10, 2017).

$112 billion in the past six years.[4]

37.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[5]

38.     There may be a time lag between when harm occurs versus when it is discovered, and also between when personally identifying information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

39.     Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is

---

[4] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits0inflection-point (last visited April 10, 2017).

[5] Victims of Identity Theft, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf last visited April 10, 2017).

[6] GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 10, 2017).

incurring and will continue to incur such damages in addition to any fraudulent use of their personally identifying information.

40. The PII of Plaintiffs and Class members is private and sensitive in nature and was left inadequately protected by Equifax. Equifax did not obtain Plaintiffs' and Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

41. The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulation, industry practices, and the common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

42. Equifax had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches.

43. Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Equifax would have prevented the Data Breach and, ultimately,

the theft of its customers' PII.

44.    Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer economic damages and other actual harm for which they are entitled to compensation, including:

a)  Theft of their personal and financial information;

b)  Unauthorized charges on their debit and credit card accounts;

c)  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the black market;

d)  The untimely and inadequate notification of the Data Breach;

e)  The improper disclosure of their PII;

f)  Loss of privacy;

g)  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

h)  Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

i) Ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

j) Loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees; and adverse effects on their credit including adverse credit notations; and

k) The loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

45.    Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to FED. R. CIV. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Nationwide class defined as

follows:

> All persons residing in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Nationwide Class"). Further, State Subclasses are defined below.

46.     Excluded from each of the above Classes are Equifax and any of its affiliates, parents or subsidiaries; all employees of Equifax; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

47.     Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

48.     Each of the proposed Classes meets the criteria for certification under FED. R. CIV. P. 23(a), (b)(2), (b)(3) and (c)(4).

49.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the proposed Class include at least 143 million individuals whose PII was compromised in the Equifax Data Breach. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet

postings, and/or published notice.

50. **Commonality. Fed R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Fed. R. Civ. P. 23(2)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a) Whether Equifax had a duty to protect PII;

b) Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c) Whether Equifax's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d) Whether Equifax was negligent in failing to implement reasonable and adequate security procedures and practices;

e) Whether Equifax's failure to implement adequate data security measures allowed the breach to occur.

f) Whether Equifax's conduct, including their failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of PII of Plaintiffs and Class members;

g) Whether Plaintiffs and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably protect its POS systems and data network; and

h) Whether Plaintiffs and Class members are entitled to relief.

51. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of those of other class members. Plaintiffs had their PII compromised in the Data Breach. Plaintiffs' damages and injuries are akin to other Class members and Plaintiffs seek relief consistent with the relief of the Class.

52. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Equifax to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

53. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Fed. R. Civ. P. 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiffs may not be sufficient to justify individual litigation. Here the damages suffered by Plaintiffs and the Class are relatively

small compared to the burden and expense required to individually litigate their claims against Equifax, and thus, individual litigation to redress Equifax's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

54. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

55. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a) Whether Equifax failed to timely notify the public of the Breach;

b) Whether Equifax owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c) Whether Equifax's security measures were reasonable in light of data security recommendation, and other measures recommended by data security experts;

d) Whether Equifax failed to adequately comply with industry standards amounting to negligence;

e) Whether Defendant failed to take commercially reasonable steps to safeguard the PII of Plaintiffs and the Class members; and

f) Whether adherence to data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

56.    Finally, all members of the proposed Classes are readily ascertainable. Equifax has access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this information, the members of the Class can be identified and their contact information ascertained for the purposes of providing notice to the Class. This is proven by the fact that Equifax has set up a website which allows customers to ascertain whether they are subject to the Data Breach as alleged above. Hence, Equifax may not now assert that identification of the Class members is impossible.

**CAUSES OF ACTION**

**Count I**
**Negligence**
**(On behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

57.     Plaintiffs restate and reallege Paragraphs 1 through 48 as if fully set forth herein.

58.     Upon accepting and storing the PII of Plaintiffs and Class Members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the PII was private and confidential and should be protected as private and confidential.

59.     Equifax owed a duty of care not to subject Plaintiffs, along with their PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

60.     Equifax owed numerous duties to Plaintiffs and to members of the Nationwide Class, including the following:

a) To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b) To protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

c) To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

61.     Equifax also breached its duty to Plaintiffs and the Class members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, Equifax failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted and unknown third party to gather PII of Plaintiffs and Class members, misuse the PII and intentionally disclose it to others without consent.

62.     Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Equifax knew about numerous, well-publicized data breaches, including the breach at Experian.

63.     Equifax knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class members' PII.

64.     Equifax breached its duties to Plaintiffs and Class members by fialing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members.

65.     As a direct and proximate result of Equifax's conduct, Plaintiffs and the Class suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through he use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' inability to use their debit or credit cards because those cards were cancelled or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including, but not limited to late fee charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

## Count II
## Negligence Per Se
## (On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)

66.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

67.     Section 5 of the FTC Act prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

68.     Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a corporation such as Equifax, including, specifically, the immense damages that would result to Plaintiffs and Class members.

69.     Equifax's violation of Section 5 of the FTC Act constitutes negligence *per se*.

70.     Plaintiffs and Class members are within the class of persons the FTC Act was intended to protect.

71.    As a direct and proximate result of Equifax's negligence per se, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from Plaintiffs' inability to use their debit or credit cards because those cards were cancelled or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including, but not limited to late fee charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

**Count III**
**Willful Violation of the Fair Credit Reporting Act**
**("FCRA")**
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

72.    Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

73.    As individuals, Plaintiffs and Class members are consumers entitled to

the protections of the FCRA. 15 U.S.C. § 1681a(c).

74. Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties…" 15 U.S.C. § 1681a(f).

75. Equifax is a consumer reporting agency under FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

76. As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to… limit the furnishing of consumer reports to the purposes listed under section 1681B of this title." 15 U.S.C. § 1681e(a).

77. Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (a) credit… to be

used primarily for personal, family, or household purposes;… or (c) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

78.    As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Nationwide Class members PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

79.    Equifax furnished the Nationwide Class members' consumer reports by disclosing their consumer reports to unauthorized or unknown entities or computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or

computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

80. Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. The willful and reckless nature of Equifax's violations are supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years and Equifax's numerous other data breaches in the past. Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches and willingly failed to take them.

81. Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. *See, e.g.,* 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E. Equifax obtained or had available these and other substantial written materials that apprised them of

their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiffs and other members of the Classes of their rights under FCRA.

82.    Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class members' personal information for no permissible purposes under the FCRA.

83.    Plaintiffs and the Nationwide Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer… or damages of not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a)(1)(A).

84.    Plaintiffs and the Nationwide Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

### Count IV
### Negligent Violation of the Fair Credit Reporting Act
**(On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)**

85.    Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

86.     Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

87.     Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and Nationwide Class members' PII and consumer reports for no permissible purpose.

88.     Plaintiffs and the Nationwide Class members have been damaged by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C § 1681o(a)(1).

89.     Plaintiffs and the Nationwide Class members are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

## Count V
## Declaratory Judgement
## (On Behalf of Plaintiffs and the Nationwide Class, or, Alternatively, Plaintiffs and the Separate Statewide Classes)

90.     Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

91.     As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

92.     Equifax still possesses PII pertaining to Plaintiffs and Class members.

93.     Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and most importantly, its systems.

94.     Accordingly, Equifax has not satisfied its contractual obligations and legal duties to Plaintiffs and Class members. In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is more vulnerable than previously.

95.     Actual harm has arisen in the wake of the Equifax Data Breach regarding Equifax's contractual obligations and duties of care to provide data security measures to Plaintiffs and Class members.

96. Plaintiffs, therefore, seek a declaration that (a) Equifax's existing data security measures do not comply with its contractual obligations and duties of care and (b) in order to comply with its contractual obligations and duties of care, Equifax must implement and maintain reasonable security measures.

**Count VI**
**Violation of Virginia Consumer Protection Act**
**(VA. CODE § 59.0-196 *et seq.*)**

97. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

98. Plaintiff Jack Mackleer brings this claim on behalf of himself and the Virginia Subclass.

99. Defendant's misrepresentations, active concealment, and failures to disclose violated the Virginia Consumer Protection Act ("VCPA") in that Defendant misrepresented that its services and products were of a particular standard, quality, grade, and/or style when they were of another (Va. Code § 59.1-200).

100. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

101. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

102. Defendant's misrepresentations and omissions were material to Plaintiff Jack Mackleer and members of the Virginia Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Virginia Subclass known the truth, they would have acted differently.

103. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

104. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the VCPA.

105. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

106. As a direct and proximate result of Equifax's violation of the VCPA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and

Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

107.  Also as a direct result of Equifax's knowing violation of the VCPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated

attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect

themselves.

108. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

109. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the VCPA, costs, and such other further relief as the Court deems just and proper.

## Count VII
## Violation of the Arizona Consumer Fraud Act
## (A.R.S. § 44-1522(A))

110. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

111. Plaintiff Gary Asti brings this claim on behalf of himself and the Arizona Subclass.

112. The Arizona Consumer Fraud Act ("ACFA") prohibits the "use or

employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission" related to the sale of goods or services. A.R.S. § 44-1522(A); A.R.S. §44-1521(5).

113. Defendant's misrepresentations, active concealment, and failures to disclose violated the ACFA in that Defendant used misrepresentations, fraud, concealment, and/or omissions in the sale of their services to Plaintiffs. A.R.S. § 44-1522(A).

114. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

115. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

116. Defendant's misrepresentations and omissions were material to Plaintiff Gary Asti and members of the Arizona Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the

Arizona Subclass known the truth, they would have acted differently.

117. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

118. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the ACFA.

119. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

120. As a direct and proximate result of Equifax's violation of the ACFA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on

their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

121. Also as a direct result of Equifax's knowing violation of the ACFA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

122. Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

123. Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

124. Ordering that Equifax audit, test, and train its security personnel

regarding any new or modified procedures;

125. Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

126. Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

127. Ordering that Equifax conduct regular database scanning and securing checks;

128. Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

129. Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

130. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and

unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

131. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the ACFA, costs, and such other further relief as the Court deems just and proper.

## Count IIX
## Violation of Colorado Consumer Protection Act
### (C.R.S.A. § 6-1-101 *et seq.*)

132. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

133. Plaintiffs Jason Tepfenhart and Nicholas Tepfenhart bring this claim on behalf of themselves and the Colorado Subclass.

134. Defendant's misrepresentations, active concealment, and failures to disclose violated the Colorado Consumer Protection Act ("CCPA") in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they knew or should have known they were of another (C.R.S.A. § 6-1-105(1)(g)).

135. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it

collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

136. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

137. Defendant's misrepresentations and omissions were material to Plaintiffs Jason and Nicholas Tepfenhart and members of the Colorado Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Colorado Subclass known the truth, they would have acted differently.

138. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

139. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the CCPA.

140. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

141. As a direct and proximate result of Equifax's violation of the CCPA,

Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

142. Also as a direct result of Equifax's knowing violation of the CCPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief,

including, but not limited to:

i) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

j) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

k) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

l) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

m) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

n) Ordering that Equifax conduct regular database scanning and securing checks;

o) Ordering that Equifax routinely and continually conduct internal training and education to inform internal  security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

p) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

143.   Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

144.   Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the CCPA, costs, and such other further relief as the Court deems just and proper.

**Count IX**
**Violation of Tennessee Consumer Protection Act of 1977**
**(T.C.A. § 47-18-101 *et seq.*)**

145.   Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

146. Plaintiff Destini Norris brings this claim on behalf of himself and the Tennessee Subclass.

147. Defendant's misrepresentations, active concealment, and failures to disclose violated the Tennessee Consumer Protection Act of 1977 ("TCPA") in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they were of another (T.C.A. § 47-18-104(a)(7)).

148. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

149. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

150. Defendant's misrepresentations and omissions were material to Plaintiff Destini Norris and members of the Tennessee Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Tennessee Subclass known the truth, they would have acted differently.

151. The conduct described herein has tremendous potential to be repeated

where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

152. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the TCPA.

153. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

154. As a direct and proximate result of Equifax's violation of the TCPA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying

financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

155.  Also as a direct result of Equifax's knowing violation of the TCPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a)  Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b)  Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c)  Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d)  Ordering that Equifax segment PII by, among other things, creating firewalls

and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

156. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the

public at large.

157.  Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the TCPA, costs, and such other further relief as the Court deems just and proper.

## Count X
## Violation of North Carolina Consumer Protection law
## (N.C.G.A. § 75-1.1 *et seq*.)

158.  Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

159.  Plaintiff Brian Kaden brings this claim on behalf of himself and the North Carolina Subclass.

160.  Defendant's misrepresentations, active concealment, failures to disclose, and deceptive acts violated the consumer protection provisions of North Carolina law in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they were of another (N.C.G.S.A. § 75-1.1).

161.  As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately

secure PII.

162. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

163. Defendant's misrepresentations and omissions were material to Plaintiff Brian Kaden and members of the North Carolina Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the North Carolina Subclass known the truth, they would have acted differently.

164. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

165. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates N.C.G.S.A. § 75-1.1.

166. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

167. As a direct and proximate result of Equifax's violation of N.C.G.S.A. § 75-1.1, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or

on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

168.   Also as a direct result of Equifax's knowing violation of N.C.G.S.A. § 75-1.1, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a)  Ordering that Equifax engage third-party security auditors/penetration testers

as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to

third parties, as well as the steps Equifax customers must take to protect themselves.

169. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

170. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to N.C.G.S.A. § 75-16 and N.C.G.S.A. § 75-16.1, costs, and such other further relief as the Court deems just and proper.

## Count XI
## Violation of Mississippi Consumer Protection law
### (MISS. CODE § 75-24-5 *et seq.*)

171. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

172. Plaintiff Danika Aday brings this claim on behalf of himself and the Mississippi Subclass.

173.   Defendant's misrepresentations, active concealment, and failures to disclose violated Miss. Code § 75-24-5(2)(g) in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they were of another.

174.   As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

175.   The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

176.   Defendant's misrepresentations and omissions were material to Plaintiff Danika Aday and members of the Mississippi Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Mississippi Subclass known the truth, they would have acted differently.

177.   The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

178.   Furthermore, as alleged above, Equifax's failure to secure consumers'

PII violates the FTCA and therefore violates Miss. Code § 75-24-5.

179.   Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

180.   As a direct and proximate result of Equifax's violation of Miss. Code § 75-24-5, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the

far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

181. Also as a direct result of Equifax's knowing violation of Miss. Code § 75-24-5, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure

manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

182. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

183. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and

attorneys' fees pursuant to Miss. Code § 75-24-15, costs, and such other further relief as the Court deems just and proper.

## Count XII
## Violation of North Dakota Unlawful Sales or Advertising Practices Law
## (NDCC, 51-15-01 *et seq.*)

184. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

185. Plaintiff Brian Harris brings this claim on behalf of himself and the North Dakota Subclass.

186. Defendant's misrepresentations, active concealment, and failures to disclose violated the North Dakota Unlawful Sales or Advertising Practices Law ("NDUSAPL") in that Defendant engaged in deception and fraud with the intent that others would rely thereon in acquiring or using Defendant's products and/or services. NDCC, 51-15-02.

187. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

188. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

189. Defendant's misrepresentations and omissions were material to Plaintiff Brian Harris and members of the Tennessee Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the North Dakota Subclass known the truth, they would have acted differently.

190. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

191. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the NDUSAPL.

192. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

193. As a direct and proximate result of Equifax's violation of the NDUSAPL, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were

cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

194. Also as a direct result of Equifax's knowing violation of the NDUSAPL, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues

detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

195. Plaintiffs bring this action on behalf of themselves and Class

Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

196. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the NDUSAPL, costs, and such other further relief as the Court deems just and proper.

## Count XIII
## Violation of Georgia Uniform Deceptive Trade Practices Act
## (O.C.G.A. § 10-1-370 *et seq*.)

197. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

198. Plaintiffs Tiffany Fossett and James Gates bring this claim on behalf of themselves and the Georgia Subclass.

199. Defendant's misrepresentations, active concealment, and failures to disclose violated the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") in that Defendant represented that its services and products were of

a particular standard, quality, and/or grade when they were of another (O.C.G.A. § 10-1-372(a)(7)).

200.   As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

201.   The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

202.   Defendant's misrepresentations and omissions were material to Plaintiffs Tiffany Fossett and James Gates and members of the Georgia Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Georgia Subclass known the truth, they would have acted differently.

203.   The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

204.   Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the GUDTPA.

205.   Equifax knew or should have known that its computer system and

data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

206. As a direct and proximate result of Equifax's violation of the GUDTPA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years

to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

207. Also as a direct result of Equifax's knowing violation of the GUDTPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing

checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal  security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

208.  Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

209.  Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the GUDTPA, costs, and such other further relief as the Court deems just and proper.

**Count XIV**
**Violation of California Consumer Legal Remedies Act**
**(CAL.CIV.CODE § 1750 *et seq.*)**

210.  Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

211.  Plaintiff Nicolas Velasquez brings this claim on behalf of himself and the California Subclass.

212.  Defendant's misrepresentations, active concealment, and failures to disclose violated the Consumer Legal Remedies Act ("CLRA") in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they were of another (Cal.Civ.Code § 1770(a)(7)).

213.  As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

214.  The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

215.  Defendant's misrepresentations and omissions were material to Plaintiff Nicolas Velasquez and members of the California Subclass, such that a reasonable person would consider them important in deciding whether to purchase

Defendant's service plans and products, and had Plaintiff and members of the California Subclass known the truth, they would have acted differently.

216. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

217. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the CLRA.

218. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

219. As a direct and proximate result of Equifax's violation of the CLRA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost

time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

220. Also as a direct result of Equifax's knowing violation of the CLRA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

221. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and

Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

222. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the CLRA, costs, and such other further relief as the Court deems just and proper.

## Count XV
### Violation of Washington Consumer Protection Act
### (RCW 19.86.010 *et seq*.)

223. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

224. Plaintiff William Kittredge brings this claim on behalf of himself and the Washington Subclass.

225. Defendant's misrepresentations, active concealment, and failures to disclose violated the Washington Consumer Protection Act ("WCPA") in that Defendant engaged in deceptive acts or practices in the conduct of trade. RCW 19.86.020.

226. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it

collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

227. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

228. Defendant's misrepresentations and omissions were material to Plaintiff William Kittredge and members of the Washington Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Washington Subclass known the truth, they would have acted differently.

229. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

230. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the WCPA.

231. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

232.  As a direct and proximate result of Equifax's violation of the WCPA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

233. Also as a direct result of Equifax's knowing violation of the WCPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

234. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

235. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the WCPA, costs, and such other further relief as the Court deems just and proper.

**Count XVI**
**Violation of Missouri Consumer Protection Law**

## (V.A.M.S. 407.020 *et seq.*)

236. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

237. Plaintiffs John Handrock and Jamie Handrock bring this claim on behalf of themselves and the Missouri Subclass.

238. Defendant's misrepresentations, active concealment, and false promises violated Missouri consumer protection law (V.A.M.S. 407.020) in that Defendant engaged in deception and fraud in connection with the sales of goods and/or services.

239. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

240. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

241. Defendant's misrepresentations and omissions were material to Plaintiffs John Handrock and Jamie Handrock and members of the Missouri Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and

members of the Missouri Subclass known the truth, they would have acted differently.

242. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

243. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates V.A.M.S. 407.020.

244. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

245. As a direct and proximate result of Equifax's violation of V.A.M.S. 407.020, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost

time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

246.   Also as a direct result of Equifax's knowing violation of V.A.M.S. 407.020, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a)  Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b)  Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

247. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and

Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

248. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to V.A.M.S. 407.025, costs, and such other further relief as the Court deems just and proper.

### Count XVII
### Violation of Utah Truth in Advertising Law
### (U.C.A. 1953 § 13-11A-1 *et seq.*)

249. Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

250. Plaintiff Brian Harris brings this claim on behalf of himself and the Utah Subclass.

251. Defendant's misrepresentations, active concealment, and failures to disclose violated the Utah Truth in Advertising Law ("UTAL") in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they were of another (U.C.A. 1953 § 13-11a-3(1)(g)).

252. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it

collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

253. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

254. Defendant's misrepresentations and omissions were material to Plaintiff Brian Harris and members of the Utah Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Utah Subclass known the truth, they would have acted differently.

255. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

256. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the UTAL.

257. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

258. As a direct and proximate result of Equifax's violation of the UTAL, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

259. Also as a direct result of Equifax's knowing violation of the UTAL, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

260. Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

261. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the UTAL, costs, and such other further relief as the Court deems just and proper.

**Count XIIX**
**Violation of Indiana Deceptive Consumer Sales Law**
**(IC 24-5-0.5-1 *et seq.*)**

262.    Plaintiffs restate and reallege Paragraphs 1 through 47 as if fully set forth herein.

263.    Plaintiff Tracey Stough brings this claim on behalf of himself and the Indiana Subclass.

264.    Defendant's misrepresentations, active concealment, and failures to disclose violated Indiana Deceptive Consumer Sales law, specifically IC 24-5-0.5-3, in that Defendant represented that its services and products were of a particular standard, quality, and/or grade when they knew or reasonable should have known they were of another.

265.    As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

266.    The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

267.    Defendant's misrepresentations and omissions were material to Plaintiff Tracey Stough and members of the Indiana Subclass, such that a

reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Indiana Subclass known the truth, they would have acted differently.

268. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

269. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates IC 24-5-0.5-3.

270. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

271. As a direct and proximate result of Equifax's violation of IC 24-5-0.5-3, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class Members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not

limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

272.   Also as a direct result of Equifax's knowing violation of IC 24-5-0.5-3, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal  security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

273.  Plaintiffs bring this action on behalf of themselves and Class Members for the relief requested above and for the public benefit in order to

promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

274. Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to IC 24-5-0.5-4, costs, and such other further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Equifax as follows:

a) For an Order certifying the Classes, as defined herein, and appointing Plaintiffs and their Counsel to represent the Nationwide Class, or in the alternative the separate Statewide Classes;

b) For equitable relief enjoining Equifax from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiffs and Class members;

c) For equitable relief compelling Equifax to use appropriate cyber security methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromised;

d) For an award of damages, as allowed by law in an amount to be determined;

e) For an award of attorneys' fees costs and litigation expenses, as allowable by law;

f) For prejudgment interest on all amounts awarded; and

g) Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Submitted this the 15th day of September, 2017.

/s/ Robert M. Weaver

Robert M. Weaver

/s/ Tessa A. Warren

Tessa A. Warren

OF COUNSEL:
QUINN, CONNOR, WEAVER,
 DAVIES & ROUCO LLP
3516 Covington Highway
Decatur, Georgia  30032
(404) 299-1211
rweaver@qcwdr.com
twarren@qcwdr.com